# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEA L. SALA, | ) | |
| | ) | NO. |
| And | ) | |
| JANE DOE, MINOR, BY AND | ) | TYPE OF PLEADING: |
| THROUGH PARENT SHEA L. SALA | ) | **COMPLAINT** |
| | ) | |
| And | ) | |
| MARC T. VALENTINE | ) | |
|     PLAINTIFFS | ) | JURY TRIAL |
| VS. | ) | |
| | ) | |
| SOMERSET COUNTY CHILDREN | ) | FILED ON BEHALF OF: |
| AND YOUTH SERVICES, | ) | Plaintiffs |
| | ) | |
| And | ) | |
| | ) | |
| KIMBERLY MAHONEY | ) | |
| CASEWORKER | ) | COUNSEL OF RECORD: |
| SOMERSET COUNTY CHILDREN | ) | MARC T. VALENTINE, ESQUIRE |
| AND YOUTH SERVICES | ) | VALENTINE LAW PC. |
| | ) | PA ID. 313624 |
| And | ) | SOMERSET, PA 15501 |
| | ) | (814) 701-2835 |
| JOHN/ JANE DOE, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| JOHN/ JANE DOE, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| JOHN/ JANE DOE, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| JOHN/ JANE DOE, | ) | |
| | ) | |
|     DEFENDANTS. | ) | |

1

# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHEA L. SALA,   ET AL. ) | |
| ) | NO. |
| PLAINTIFFS, ) | |
| ) | TYPE OF PLEADING: |
| VS. ) | **COMPLAINT** |
| ) | |
| SOMERSET COUNTY CHILDREN ) | |
| AND YOUTH SERVICES,   ET AL. ) | |
| DEFNENDANTS ) | JURY TRIAL |
| ) | |
| ) | |

## COMPLAINT

AND NOW, comes SHEA L. SALA, JANE DOE, MINOR, BY AND THROUGH PARENT SHEA L. SALA, and MARC T. VALENTINE, by and through their Attorney, Marc T. Valentine, Esquire, filing this Complaint and avers the following in support:

## PARTIES

1. Shea L. Sala, herein after referred to as Sala, resides at 2569 Carpenter Park Road, Davidsville, Pennsylvania, Somerset County.
2. Jane Doe, Minor, by and through Parent Shea L. Sala, hereinafter referred to as Minor Child, resides at 2569 Carpenter Park Road, Davidsville, Pennsylvania, Somerset County.
3. Marc T. Valentine, hereinafter referred to as Valentine, residing at 116 North Center Avenue, Somerset, Pa 15501.
4. Somerset County Children and Youth Services, hereinafter referred to CYS, with its principal place of business being 300 North Center Avenue, Suite 220, Somerset, PA 15501.
5. Kimberly Mahoney, hereinafter referred to as Mahoney, who is employed at CYS at 300 North Center Avenue, Suite 220, Somerset, PA 15501 and is a residence of Pennsylvania.

**JURISDICTION**

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4).
7. Federal Question Original Jurisdiction is proper in that this complaint is based 42 U.S.C. Section 1983 and 1985.
8. Declaratory relief is authorized by 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57. Injunctive relief is authorized by Federal Rule of Civil Procedure 65.
9. This Court has personal jurisdiction over the defendants who are located in the Western District of Pennsylvania.
10. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(a) in that the defendants are subject to personal jurisdiction within the Western District of Pennsylvania and the events that give rise to this action occurred within the Western District of Pennsylvania.
11. United States District Court for the Western District of Pennsylvania is the proper venue for this court as the amount in controversy is more than $75,000 and the parties are diverse in that the Defendant is for North Carolina and the Plaintiff is from Pennsylvania. 28 U.S.C. § 1332.
12. The Cause of Action herein are not preempted by the Immunities Statute.

**FACTUAL BACKGROUND**

13. Sala is a 34-year-old single mother who is divorced from Michael Vafossen II.
14. Sala and her Father are the parents of a 15-year-old child referred to in this complaint as Minor Child.
15. Valentine is the friend and attorney for Sala and the Minor Child.
16. For several years the Sala and the Father had shared 50-50 custody of the Minor Child until December 19, 2024.
17. During the prior year, the minor child suffered incidents of mental, emotional and physical abuse.

18. Minor child was verbally abused on a daily basis, was told that the minor child was fat and had lost a significant amount of weight during the prior year, was used to raise the two younger siblings, was pushed against walls and grabbed, screamed at, told the minor child was not smart enough, told repeatedly that if the minor child did anything about the abuse that the father would prevent the child from ever seeing the mother, and to do daily duties as though the minor child is an adult.
19. On December 19, 2024, minor child decided to no longer live with the father due to the abuse.
20. On December 19, 2024, there was no custody order, and the matter had never been before the Court of Common Pleas of Somerset County Pennsylvania.
21. Prior to December 19, 2024, Sala and Valentine had been friends and discussed the ongoing custody issues.
22. After the minor child had moved out of the Father's residence, Sala contacted Valentine for legal services.
23. The first week of January 2025, Sala, by her attorney Valentine, filed a complaint in custody and a petition for emergency custody of the minor child at docket 3 Custody 2025.
24. The minor child competed in wrestling and suffered a concussion.
25. The minor child received treatment from a concussion doctor.
26. The minor child began seeing REACH at the minor child's school for mental health counseling and therapy because of the abuse.
27. In February 2025, a ChildLine had been filed alleging mental, physical and emotional abuse by the Father and Father's spouse and the victim being the minor child.
28. The ChildLine directory referred the child abuse referral to Somerset County Children and Youth Services.
29. The Father filed for special relief to receive custody of the minor child.
30. On or about February 28, 2025, the parties were scheduled for a custody mediation conference in the Somerset County Court of Common Pleas.
31. The matter was deferred to an evidentiary hearing scheduled for March 10, 2025.

32. At the evidentiary hearing the parties agreed to special conditions that were to prevent the father and stepmother from abusing the minor child and allowing for the parties to have a week about 50/50 custody.
33. March 28, 2025: Father went home to Fathers home address intoxicated. Father was visibly intoxicated and smelled of alcohol.
34. Father entered minor child's bedroom by kicking open the door.
35. Father repeatedly kicked minor child's door open on a nightly basis while Father was intoxicated.
36. Father accused minor child of using drugs and alcohol and threatened to force minor child to take a drug test.
37. Minor child was laying on minor child's stomach on the phone with a friend, when Father forcefully turned over numerous times the minor child.
38. Father grabbed the minor child by the leg leaving bruises and red marks on the right leg and thigh.
39. Minor child had bruises on her left leg and arm.
40. Minor child had to fight off Father and had to kick Father away to prevent further injury.
41. Minor child's friend was on the phone and heard minor child scream "get off of me".
42. Father struck minor child numerous times.
43. Minor child had marks on arm and leg from Father attempting to forcefully turn over the minor child.
44. Father has a history of throwing things at the minor child.
45. March 29, 2025: Father informed minor child that the minor child "messed up" and a custody agreement is in place.
46. If minor child's mother were to go back to court the judge would give the Father full custody and the minor child would never see the minor child's mother again."
47. Father told minor child that minor child is a liar and the minor child cost the Father a lot of money.

48. Father refused to let minor child go to friend's house because Father said he would not reward ignorance.

49. March 30, 2025: Father informed minor child that minor child has an extended chore list for being lazy and antisocial.

50. Father entered minor child's room and screamed violently at minor child to clean up the dog urine.

51. Minor child was not aware of urine nor that minor child was to clean up the urine.

52. Father informed minor child the Father could "yell at the minor child whenever the fuck the Father wanted to and however fucking wild the Father wants to and that the Fathers little lawyer nor the court could do anything about it."

53. The Father called the minor child "a little fucking liar" and told the minor child to "get off her ass and quit being a lazy little fuck."

54.  Father was screaming at Father's wife and the two younger minor children after the incident.

55. Minor child tried to get away from Father by going up the stairway, while the father was threatening and attempting to hit the minor child while going up the stairway.

56. Minor child then asked to take a shower later that night and Father told the minor child that the minor child could not take a shower because the minor child was lazy.

57. Father was screaming violently at minor child.

58. March 31, 2025:  minor child went to Conemaugh Township to school and a mandatory reporter reported to Childline the bruises on the minor child's leg and arm.

59. CYS contacted Sala by phone through caseworker Amanda Robinette.

60. Robinette informed Sala that Robinette and caseworker Mahoney were in route to the school and that a ChildLine abuse allegation have been made concerning the minor child.

61. Robinette informed Sala that Robinette would meet with the minor child and Mahoney would meet with the father.

62. Robinette stated that the child would not leave with the father.

63. Without notice, Robinette did not arrive at the school nor spoke with father or minor child.

64. Mahoney allowed minor child to leave the school with the father.

65. Father repeatedly threatened minor child about the allegations while firearms were in the motor vehicle on the way to fathers home.

66. While at father's home, the father repeatedly threatened the minor child.

67. Father had picked up minor child at the school at or around 4:30 PM.

68. Mahoney did not arrive at the father's home until between 6:00 and 6:30 PM.

69. When Mahoney arrived at father's home, Mahoney berated the minor child and told the minor child there weren't enough marks on the minor child to be abuse.

70. Mahoney took photographs of the minor child while partially naked without any other person in the room.

71. Mahoney did not receive authorization from the parents to photograph the child nor to be alone with the child.

72. During that evening Mahoney screamed at the minor child numerous times and accused the minor child of being a liar.

73. At around 4:30 PM, Sala called Valentine at Valentine's office and told him what was transpiring.

74. Valentine had previously worked at CYS.

75. Valentine had been appointed to numerous parents and children in CYS cases from 2012 to 2020.

76. Valentine had experience in hundreds of custody cases in several counties in the Commonwealth of Pennsylvania including Somerset County.

77. Valentine told Sala that he would come and attempt to assist her in the matter.

78. Valentine drove from Somerset PA to Davidsville PA and met Sala at her parents home.

79. When Valentine arrived, Sala was extremely upset with the incidents that occurred.

80. During the weekend in question, the minor child had text Valentine concerning some of the events that had transpired.

81. In those text messages, the minor child did not mention having marks on the minor child's leg and arm.

82. Valentine did not immediately ChildLine the events because Valentine was unaware of the full extent of the issues.

83. Sala was not aware of the extent of the issues nor the marks that had occurred until the ChildLine had been made by the school.

84. Valentine and Sala were first informed about the marks from caseworker Robinette.

85. On that evening, Valentine and Sala viewed the marks on the minor child and Sala took photographs.

86. Valentine accompanied Sala to the father's home to retrieve the minor child.

87. The father had text Sala informing her to come and get the minor child.

88. Mahoney informed Valentine and Sala that Mahoney was removing the minor child from the father's home.

89. No documents were filed nor a safety plan created to protect the child.

90. The minor child was then returned to Sala.

91. Mahoney accused Sala of allowing the minor child to be injured because Sala did not call to have a welfare check done by the police.

92. Sala did have the Township police accompany her to the home because of the prior violence by the father against her.

93. On April 1, 2025, Sala scheduled for the child to go to Pediatric Care Specialists in Johnstown Pennsylvania to have a medical exam done with respect to the abuse.

94. A physician's assistant examined the minor child.

95. The physicians assistant was trained in child abuse examination and forensic examination of the minor child.

96. The physicians assistant made a finding that the child had suffered physical and emotional abuse by the father.

97. The physicians assistant took pictures of the bruising on the minor child.

98. Valentine sent the pictures and report to CYS, District Attorney's Office, Pennsylvania State police and the Somerset County CAC.

99. Mahoney did not contact Conemaugh Township Police or any other party.

100. On or about April 4, 2025, Sala and the minor child filed for protection from abuse order in the Somerset County Court of Common Pleas and were granted a temporary order.

101. A evidentiary hearing on the matter was scheduled for May 29, 2025.

102. Between March 28, 2025 and April 20, 2025, the minor child was subjected to bullying and ridicule concerning the events that occurred.

103. The father of the minor child informed friends of the minor child that the minor child was a liar and a bad person.

104. The child's grades decreased at an increasing rate because of this action and the minor child refer refused to go to school.

105. Valentine and Sala tried to get the school and its administration to work with the child with respect to bullying and education.

106. The school was reluctant to assist.

107. Sala, minor child and Valentine contacted the Somerset County District Attorney's Office, Somerset County PSP and Conemaugh Township police concerning protection from abuse contempt violations against the father.

108. Pennsylvania State police informed Sala, minor child in Valentine that no PFA violation had occurred.

109. District Attorney's Office several weeks later sent an email stating that the violations should be heard in Cambria County although the events occurred in Somerset County.

110. Several weeks later, Mahoney contacted Sala and scheduled a forensic interview at Somerset County CAC on April 24, 2025 at 9 AM.

111. Valentine and Sala accompanied the minor child to the CAC.

112. At the interview, the CAC interviewer highly recommended that the child undergo trauma counseling.

113. The CAC rules and regulations prevent any person that either views the video or attends the interview to divulge any of the discussions and circumstances that occurred during the interview.

114. Valentine and Sala were not permitted to be present during the interview.

115. After the interview, Mahoney met with Sala and berated Sala for the events that transpired.

116. Mahoney forced Sala to discuss the physical abuse the Sala had suffered by the hands of the father.

117. Mahoney made derogatory comments about the minor child and about Sala to Sala and the minor child.

118. Mahoney did say that the minor child should attend online schooling and would have the father signed release.

119. The child advocate provided the minor child with a folder for the counseling and a list of counselors.

120. Mahoney told Sala that she had agreed that counseling was necessary.

121. Mahoney had the minor child and Sala sign five authorizations for protected information.

122. While at the CAC, Mahoney informed Sala about the minor child's school attendance, grades, social media interactions and other negative comments about the child.

123. Mahoney informed Sala that Mahoney had surveilled Sala in the minor child while at the hospital for testing on an unrelated matter.

124. The information that Mahoney had described had been provided to Mahoney without the proper releases from the minor child and from Sala.

125. On or about April 29, 2025, a doctor at the minor child's pediatrician, after examining the minor child, made a decision that the minor child should attend online schooling.

126. On or about the same time, Valentine sent a letter informing the school that the minor child needed to attend online schooling.

127. Within 24 hours the minor child was permitted to attend online schooling.

128. Valentine was in contact with Somerset County District Attorney's Office on several occasions and was informed that Valentine should ChildLine the incidents that occurred with each event being a separate ChildLine.

129. Valentine filed four child lines on those events.

130. At least six ChildLine events were made concerning the minor child.

131. Sala nor Valentine received any letters, visits, calls, texts or emails concerning the ChildLine events being made, investigation, or other communications not aforementioned..

132. Only one letter was mailed out concerning a decision on the matter.

133. Valentine nor Sala can compare the report number to which ChildLine it corresponds to.

134. CYS did not conduct an investigation on the other ChildLine cases.

135. CYS has 60 days to complete a ChildLine investigation.

136. Initially CYS has 30 days to complete a ChildLine investigation and then must request an extension of another 30 days to complete it.

137. CYS and Mahoney did not inform the minor child, Sala or Valentine if an extension was requested.

138. On May 6, 2025, Mahoney left Sala several voice messages stating that the case would be closed, there weren't enough bruises to be abuse and that the matter was over.

139. As of May 12, 2025, d the pediatrician's office and Valentine has never received copies of an authorization to speak with CYS.

140. Mahoney never contacted Valentine concerning the case.

141. On or about May 19, 2025, Sala received a letter from Pennsylvania Department of Human Services dated May 12, 2025, stating that report 20411453 was UNFOUNDED.

142. Valentine did not receive a letter nor any letters about the case or cases.

143. The determination to unfound the case was done prior to Mahoney or CYS receiving any information from the pediatrician or any other source.

144. The decision to unfound the case was done before Mahoney or CYS interviewed any other persons in the case or view the video from the CAC interview.

145. Mahoney and CYS made a determination before the MDIT reviewed or discussed the matter.

146. Mahoney and CYS did not involve the CAC in the decision.

147. A hearing was held on May 21, 2025 on motions filed by Sala concerning the May 29, 2025 protection from abuse evidentiary hearing.

148. Several days prior to that hearing, the attorney for the father filed two motions.

149. One motion was to strike the PFA and the other motion was to disqualify Valentine. The motion to disqualify Valentine was based upon allegations that Valentine had engaged in sexual activity that was not consensual and had caused a detriment to his client Sala.

150. The allegations were suggestive of being the nature of a sexual predator.

151. Sala and Valentine denied the allegations.

152. During the hearing, in chambers, the attorney for the father stated that Valentine had engaged in these actions and should be removed.

153. Valentine asked attorney for father for the basis of these allegations and the source of the allegations.

154. The attorney stated that CYS and caseworker Mahoney had informed the attorney and the father that Valentine had done these acts and should be removed as attorney.

155. The attorney further stated things that the child had divulged during the forensic interview at the CAC.

156. The attorney also stated that the minor child was a liar because the minor child gave four inconsistent descriptions of what had occurred.

157. The attorney also stated that Valentine's vehicle was at Sala's home on numerous occasions.

158. Valentine and Sala, prior to that hearing, had been followed on numerous occasions by vehicles that were surveilling them.

159. On those occasions Valentine and Sala were not in the same vehicle and were not together.

160. The attorney also stated that CYS and Mahoney had informed the attorney and the father that the markings were not consistent with abuse and were not there when Mahoney interviewed and took pictures of the child.

161. Judge Rullo, custody mediator Tom Haravi, the judge's law clerk, Attorney Darbouze and Valentine were all in the judges chambers and heard the statements.

162. The pleading concerning the sexual allegations were filed in the Somerset County prothonotary's office.

163. Numerous persons throughout the courthouse, the county and other persons in the community became aware of the filing although the filing was to be a confidential filing.

164. Valentine has a law office in Somerset Pennsylvania and has been a minister since 2008.

165. Sala works in emergency services near her residence.

166. Sala has been counseling for years from prior abuse.

167. Valentine had begun counseling in April because the events that transpired.

168. Valentine is a victim of sexual abuse as a minor.

169. The shame of the false accusations made against Valentine prevented Valentine from being at his office and operating his practice.

170. The false accusations caused both Valentine and Sala to have panic attacks and other mental health issues and sought medical attention.

171. The minor child suffered panic attacks and other mental health issues and entered into counseling because of the incidents caused as aforementioned.

172. The judge did deny the motion without prejudice against Valentine.

173. The attorney for the father did inform Valentine that CYS and Mahoney were subpoenaed and agreed to be the lead witness for the defendant at the PFA hearing.

174. The intent of CYS and Mahoney was to provide the statements and information at the hearing aforementioned.

## COUNT I:

## 42 USC Section 1983

175. Paragraph 1 through 174 is hereby incorporated by reference as though fully set forth in detail.

176. CYS is a Somerset County agency that is charged with conducting investigations and allegations concerning child abuse.

177. Mahoney is an employee of CYS.

178. Mahoney and CYS threatened, intimidated, harassed and attacked the plaintiffs during the events aforementioned.

179. The plaintiffs were deprived of their United States Constitution 14th amendment: "nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

180. The minor child and Sala were treated like criminals and interrogated like a persons under arrest without Due Process and Equal Protections of the law by CYS and Mahoney.

181. The minor child had pictures taken of the minor child without consent and without another adult present by Mahoney and CYS.

182. The minor child and Sala were dehumanized and victim shamed by Mahoney and CYS without Due Process and Equal Protections of the law.

183. The minor child was deprived of life and liberty by Mahoney and CYS.

184. The investigation was not conducted.

185. The rules and regulations of the CAC, ChildLine investigations and CYS were not followed and were violated.
186. CYS and Mahoney made false accusations about Sala and Valentine and had stated that Valentine had committed nonconsensual sexual acts against Sala.
187. CYS Mahoney made false accusations that Valentine had created a conflict of interest by sexual acts that deprive Sala a proper counsel.
188. CYS and Mahoney had no evidence or information that would lead a reasonable person to believe that Valentine and Sala had engaged in any set acts or that the attorney-client relationship had broken down.
189. The attorney for the father stated that because Valentine was on scene when the child was removed from father and his vehicle have been seen at the Sala's home that the basis that exist for this allegation.
190. CYS and Mahoney deprived Valentine, Sala and the minor child of life, property and liberty without Due Process and Equal Protections of the law.

WHEREFORE, the Plaintiff humbly requests that this Honorable Court grant the Plaintiff's request for relief and award the Plaintiff compensatory, reliance, specific, legal fees, punitive and other damages as this Court sees just and reasonable.

COUNT II:

42 USC Section 1985

191. Paragraph 1 through 190 is hereby incorporated by reference as though fully set forth in detail.
192. CYS and Mahoney deprived Valentine, Sala and the minor child of life, property and liberty without Due Process and Equal Protections of the law.
193. CYS and Mahoney attempted to deprive Sala and the Minor child of legal counsel.
194. CYS and Mahoney made statements to the prothonotary's office, Sheriff's office, the judges, courthouse staff, county employees, law enforcement, the District Attorney's

Office, public and private officials and other persons that the minor child was a liar and had fabricated the events, that Sala was a liar and created a situation that allow these events to occur and that Valentine had conspired with the minor child to create these events, and engaged in a nonconsensual sexual relationship creating a breakdown of the attorney-client relationship.

195. The minor child, Sala and Valentine deny all these accusations.

196. The minor child and Sala were denied the right to an investigation into the allegations concerning PFA violations because of the statements made by CYS and Mahoney.

197. The minor child and Sala were denied the right to an investigation without due process and equal protections under the law as to the abuse allegations because of the statements of CYS and Mahoney.

198. The minor child and Sala were denied the right to an investigation to be into criminal charges against the father because of statements by CYS and Mahoney.

199. Minor child and Sala denied services and assistance because of the statements made by CYS and Mahoney.

200. The minor child, Sala and Valentine suffered aggravated mental health issues from the statements and actions of CYS and Mahoney.

201. Sala encountered additional legal fees because of the actions of CYS and Mahoney.

202. Valentine suffered reputation, economic, physical and mental health issues because of the statements and actions of CYS Mahoney.

203. CYS and Mahoney conspired with unknown John Does and Jane Does to carry out the false accusations and statements made by CYS and Mahoney that resulted in the numerous damages to the plaintiffs.

204. At this time, it is unknown as to whom the other defendants that conspired together with CYS and Mahoney to carry out these acts.

WHEREFORE, the Plaintiff humbly requests that this Honorable Court grant the Plaintiff's request for relief and award the Plaintiff compensatory, reliance, specific, legal fees, punitive and other damages as this Court sees just and reasonable.

## COUNT III:

## NEGLIGENCE

205. Paragraph 1 through 204 is hereby incorporated by reference as though fully set forth in detail.
206. CYS and Mahoney had a duty to carry out the investigation without bias or prejudice.
207. CYS and Mahoney had a duty to carry out the investigation as an impartial third party.
208. CYS and Mahoney had a duty to investigate and make a decisions on all reports of child abuse.
209. CYS and Mahoney had a duty to follow the rules and regulations of the Commonwealth, CYS and CAC.
210. CYS and Mahoney had a duty to not divulge private/protected information to third parties.
211. CYS and Mahoney had a duty to not retrieve protected/private information without proper authorization in writing.
212. CYS and Mahoney had a duty to not make false accusations.
213. CYS and Mahoney violated the aforementioned duties by not following the rules and regulations, calling the victim a liar, not carrying out an investigation according to procedures, rules and regulations, divulging private information, divulging the inner workings of the CAC interview, violating the fiduciary duty to the minor child, Sala and the process, communicating with friends and family of the defendant, making false statements, communicating with persons who are not privy to the information, receiving and/or retrieving protected information without written authorization, divulging protected information without written authorization, making threats to the plaintiffs, and communicating in a way to ruin the reputation and character of the plaintiffs.
214. The plaintiffs suffered physical, mental and emotional damages, medical expenses, loss of representation character, wage losses and benefits, loss of protection of the law, loss of due process and equal protection, loss of services, transportation costs, legal fees, economic losses, business revenue losses and other damages.

215. The damages suffered by the plaintiffs were proximately caused by the breach of duties by the defendants.

WHEREFORE, the Plaintiff humbly requests that this Honorable Court grant the Plaintiff's request for relief and award the Plaintiff compensatory, reliance, specific, legal fees, punitive and other damages as this Court sees just and reasonable.

## COUNT IV:

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

216. Paragraph 1 through 214 is hereby incorporated by reference as though fully set forth in detail.
217. CYS and Mahoney intentionally inflicted emotional distress on the minor child, Sala and Valentine by harassing, berating, demoralizing, calling a liar, marking the abuse suffered, and other acts aforementioned.
218. These actions are not a part of the rules and regulations set forth.
219. These actions were deliberately taken to cause harm to the plaintiffs.
220. The plaintiffs suffered emotional and mental health issues because of these acts.
221. The actions of the defendants are the proximate cause of the plaintiffs damages.

WHEREFORE, the Plaintiff humbly requests that this Honorable Court grant the Plaintiff's request for relief and award the Plaintiff compensatory, reliance, specific, legal fees, punitive and other damages as this Court sees just and reasonable.

## COUNT V:

## INJUNCTIVE RELIEF

222.    Paragraph 1 through 221 is hereby incorporated by reference as though fully set forth in detail.

223.    A PFA Evidentiary Hearing is scheduled for May 29, 2025 at 9:00 am.

224.    The Defendants are witnesses in that hearing.

225.    The aforementioned investigation is evidence in that hearing.

226.    The investigations may be ongoing as to some cases.

227.    The bia, prejudice and actions of the Defendants will have an irreversible effect upon the Plaintiffs.

228.    There is no other remedy at law.

229.    CYS, Mahoney and any CYS information, investigation, photos, communications or other evidence should be stayed pending the outcome of this lawsuit.

230.    CYS and Mahoney for be prevented from any other involvement in the cys and other cases.

231.    An outside independent agency should be appointed to reconduct all investigations.

232.    The cases at 3 Custody 2025 and 229 Civil 2025 should stayed until the outcome of this lawsuit.

233.    An automatic Stay under FRCP 62 should Stay all of the aforementioned.

WHEREFORE, the Plaintiff humbly requests that this Honorable Court Grant the Injunction.

                        Respectfully Submitted,

                          /s/ Marc T. Valentine  
                        Marc T. Valentine, Esquire

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHEA L. SALA,    ET AL. | ) | |
| | ) | NO. |
|          PLAINTIFFS, | ) | |
| | ) | TYPE OF PLEADING: |
| VS. | ) | **COMPLAINT** |
| | ) | |
| SOMERSET COUNTY CHILDREN | ) | |
| AND YOUTH SERVICES,   ET AL. | ) | |
|          DEFNENDANTS | ) | JURY TRIAL |
| | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

Plaintiff Counsel affirms that the Defendants were served with a true and correct copy of the Complaint electronically by means of the electronic filing system on the date of filing.

Somerset County Children and Youth Services

300 North Center Avenue, Suite 220,

Somerset, PA 15501.

Kimberly Mahoney

300 North Center Avenue, Suite 220,

Somerset, PA 15501

Respectfully Submitted,

_/s/ Marc T. Valentine_

Marc T. Valentine, Esquire